# FILED

JUN 0 5 2006    NF

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States District Court for the Northern
District of Illinois

| | |
|---|---|
| King's Express, Inc. and Infinity<br>Logistics, Inc.<br><br>    Plaintiffs,<br><br>v.<br><br>FedEx Freight, Inc., Aero Terra,<br>Inc., and Stallion Logistics, Inc.<br><br>    Defendants<br><br>Hemasource, Inc., Dependable<br>Distribution Center, Inc., Certified<br>International Corp, Carlton Forge<br>Works, Inc., Chandler Packaging, Inc.,<br>Red Dot Corporation, BAE Systems,<br>Inc., Cascade Lighting; Noveon<br>Corporation, Taylord Services, Inc.,<br>Imports, Inc.; Louis Vuitton North,<br>Moulton Logistics, Inc.,<br>America, Inc.; SD Products, Inc.;<br>Coinstar, Inc.; Carlton Forge Works,<br>Pioneer Industries, Inc., CPS Printing,<br>Inc., ICOM America, Inc., Unique<br>Home Designs, Inc., Cashco<br>Distribution, Inc., Finn Industries,<br>Inc., Amulet Manufacturing Co.,<br>Superior Communications, Inc.,<br>Protient, Inc., Red Dot Corporation,<br>Scooter Media, Inc., Technocel, Inc.,<br>Primio Computer, Inc., Enovation,<br>Inc., Noritz America Corp., Title 9 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## 06CV3054
## JUDGE DER-YEGHIAYAN
## MAGISTRATE SCHENKIER

Sports, Inc., The Tech Group )
Phoenix, Inc., The Tech Group Indiana, )
Inc., Golden State Laundry Systems, )
Inc., Earthlite Massage Tables, Inc., )
Sea Space Corporation, Bernet )
International Trading, Inc., Miller )
International, Inc., Konica Minolta )
Business Solutions U.S.A., Inc., Pep )
Boys, Inc., Cellstar, Inc., Inamed, )
Inc., Welded Fixtures/Insight, Inc., )
Kamprite, Inc., Sumitomo Electric )
Interconnect Products, Inc., Material )
Storage Systems, Inc., Ultimate )
Product Group, Inc., Chemron )
Corporation, Kia Motors America, )
Inc., Performance Team Freight )
System, Inc., Rola Tape, Inc., Exel )
Garden & Products, Inc., DDC, Inc., )
Casa Dolce Casa USA, Inc., Paskal )
Lighting, Inc. (California); Paskal )
Lighting, Inc. (Louisiana), Insight )
Merchandising, Inc., Fagerdala USA- )
Lompoc, Inc., United Pallet Services, )
Inc., Sketchers, Inc., Hub Distributing, )
Inc., Hypercom Corporation, The )
HON Company, Century Plaza Hotel, )
Inc., Certified International, Inc., )
Taylored Services, Inc., Corporate )
Express, Inc., Telmar Network )
Technology, Inc., Commnet Supply, Inc., )
AT&T Wireless Logistics Service, Inc., )
JB Biotech, Inc., Delux Media, Inc., )
Copper Brass Sales, Inc., Infinity )
Pharmaceuticals, Inc., Adamation, )
Inc., American Mailing & Printing, Inc., )
Wrigley Manufacturing, Inc., XPEDX, )
Inc., Forms and Surfaces Co. LLC, New )
Riverside Orchre Co., Security Cameras )
Direct, Northern Video Systems, Saroj )
International, Inc., Sky King, Inc., )
American Apparel U.S.A., Inc., Swartz )
Moving and Storage, Inc., Richard L. )
Jones Customhouse Broker )
International, Inc., Warehouse, Omnitec )
Design, Inc., The Candle Factory, Inc., )
KD Trading Group, Marshall Pottery, )

2

Inc., Northern Video Systems, Inc.          )
                                            )
                     Originating Shipper )
                     Defendants              )
                                            )
                                            )
West Marine Products, Inc., Jaylyn          )
Sales, Inc., Offshore International, Inc.,   )
Delphi Medical Systems, Inc., Sanyo         )
Fisher Company, Gamas Warehouse,            )
Inc., Atwood Distributing, Inc.; ELX        )
Distribution E-Luxury Com, Inc, Inc.;       )
Kenametal, Inc., Inc., Banta Corporation, )
Mantech, International Corporation, The )
Home Depot, Inc., Safeway, Inc., Yucatan )
Foods, Inc., GES Exposition Services,       )
Inc., ATC Logistics and Electronics,        )
Inc., Naturade, Inc., Wellons Water         )
Technology, Inc., Alltel, Verint            )
Corporation, Enovation, Inc., Noritz        )
America Corp., Title 9 Sports, Inc.,        )
Tech Group Indiana, Inc., Impulsora,        )
Massage Warehouse, Inc., Ikon Office        )
Solutions, University of Maine, Troy        )
Corporation, Cavenders Boot City,           )
Pacific Office Automation, Inc., Baja       )
Sports, Inc. , ID Comm, CMR, Inc.,          )
Huck Store Fixtures, Inc., lpha Wire        )
Company, Compliance Posters, Inc.,          )
Direct Line Distribution, Inc., Marchem     )
Technologies, LLC, Auto Warehousing,        )
Inc., Movie Star, Inc., CST/Berger          )
Corp., Excel Garden & Products, Inc.,       )
Longust Distributing, Inc., Paskal          )
Lighting, Inc., Tech Data Corp.,            )
Border Foods, Inc., Shoes for Work,         )
Inc., Levi Outlet, Inc., CVS Corporation, )
 Weston Seattle Hotel, Inc., Peyton's       )
Phoenix, Inc., Federated Department         )
Stores, Inc., Inc., Global Auto             )
Processing Services, Inc., Corporate        )
Express, Inc., Office Depot, Inc., Office    )
Liquidators, Inc.,  Rohm Electronics,       )
Inc. , Cricket Communications, Inc.,        )
North Coast PCS, Inc.,  ID Comm, Inc.,      )
RSL Micro Tech, Inc.,  Tropical             )

3

Shipping, Inc., AllCargoNet, Inc.,    )
Amcar Freight, Inc., Delux Foam    )
Service, Inc., Swiss Tech Precision, Inc.,  )
FAMARCO Limited, Inc., Old Donnelly  )
Warehouse, Inc., West Marine Products, )
Inc., Dallas Fort Worth International    )
Airport Board, S.P. Richards, Inc.,    )
Costco, Inc., Cathay Pigments, Inc.,    )
Security Cameras Direct, Northern    )
Video Systems, Saylyn Sales, Inc., Ft.    )
Lauderdale Jet Center, Action Delivery, )
Inc., Latitudes, Inc., Sirva Logistics,    )
Inc., United Stationers, Gaming    )
Partners International, U.S. A., Inc.,    )
DRS Systems and Electronics, Inc.,    )
Omnitec Design, Inc., Perin-Mowen,    )
Inc., Nex-Tech-Wireless, North    )
American Antlers, American Clay    )
Works & Supply Company, Office    )
Liquidators, Inc., BH Photo, Inc., Old  )
Donnelly Warehouse, Inc., Westin    )
Seattle Hotel, Inc., Works & Supply    )
Company,    )
    )
              Consignee    )
              Defendants    )
    )
    )
Smith-West, Inc., Pioneer Industries,    )
Inc., Kennametal, Inc., Hy-Tek Material )
Handling, Inc., The Hillman Group, Inc., )
    )
          Third Party Payor  )
             Defendants.    )

# Complaint for Money Damages

Plaintiffs allege:

## Jurisdictional Allegations

1.      Jurisdiction in this case is based on diversity of citizenship and the amount in controversy pursuant to 28 USCS Section 1332. Plaintiffs King's Express, Inc. (hereinafter "King's Express") and Infinity Logistics, Inc. (hereinafter "Infinity Logistics") are corporations each incorporated under the

4

laws of the State of Minnesota, each having its principal place of business in the State of Illinois. Plaintiffs allege that Defendant FedEx Freight, Inc. (hereinafter "Defendant FedEx Freight") is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in the State of Tennessee. Defendant Aero Terra Logistics, Inc. (hereinafter "Defendant Aero Terra") is a corporation incorporated under the laws of the State of California, having its principal place of business in the State of California. Defendant Stallion Logistics, Inc. (hereinafter "Defendant Stallion Logistics") has its principal place of business in the State of Texas.

2. The matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

3. In addition to the Defendants described above, the following originating shippers, consignees, and other third party payors or others interested in the 150 subject freight loads are also Defendants, to wit:

(a) "Defendants Originating Shippers" include the following: Defendant Northern Video Systems has its principal place of business in the State of California; Defendant Dependable Distribution Center, Inc. has its principal place of business in the State of California; Defendant Sanyo Fisher Company has its principal place of business in the State of California; Defendant Rola Tape has its principal place of business in the State of Washington; Defendant Amulet Manufacturing, Inc. has its principal place of business in the State of California; Defendant Noveon Corporation; Defendant Carlton Forge Works, Inc. has its principal place of business in the State of California; Defendant Chandler Packaging, Inc., has its principal place of business in the State of California; Defendant ICOM America, Inc. has its principal place of business in the State of Washington; Defendant Finn Industries, Inc. has its principal place of business in the State of California; Defendant S.D. Products, Inc. has its principal place of business in the State of California; Defendant Enovation Graphics, Inc. has its principal place of business in the State of Washington; Defendant BAE Systems, Inc. has its principal place of business in the State of Maryland; Defendant Cascade Lighting Imports, Inc., has its principal place of business in the State of California; Defendant Louis Vuitton North America, Inc., has its principal place of business in the State of New York; Defendant Greenfield Industries, Inc. has its principal place of business in the State of Massachusetts; Defendant Coinstar, Inc. has its principal place of business in the State of Washington; Defendant Carlton Forge Works has its principal place of business in the State of California; Defendant CPS Printing, Inc. has its principal place of business in the State of California; Defendant ICOM America, Inc. has its principal place of business in the State of Washington; Defendant Unique Home Designs, Inc. has its principal place of business in the State of Arizona; Defendant Cashco Distribution, Inc. has its principal place of business in the State of Oregon; Defendant Finn Industries, Inc. has its principal place of business in the State of California; Defendant Amulet Manufacturing Co. has its principal place of business in the State of

California; Defendant Superior Communications, Inc. has its principal place of business in the State of California; Defendant Protient, Inc. has its principal place of business in the State of Minnesota; Defendant Red Dot Corporation has its principal place of business in the State of Washington; Defendant Scooter Media, Inc. has its principal place of business in the State of California; Defendant Technocel, Inc. has its principal place of business in the State of California; Defendant Primio Computer, Inc. has its principal place of business in the State of California; Defendant Enovation, Inc. has its principal place of business in the State of Nevada; Defendant Noritz America Corp has its principal place of business in the State of California; Defendant Title 9 Sports, Inc. has its principal place of business in the State of California; Defendant Tech Group Phoenix, Inc. has its principal place of business in the State of Arizona; Defendant Golden State Laundry Systems, Inc. has its principal place of business in the State of California; Defendant Earthlite Massage Tables, Inc. has its principal place of business in the State of California; Defendant Sea Space Corporation has its principal place of business in the State of California; Defendant Bernet International Trading, Inc. has its principal place of business in the State of California; Defendant Miller International, Inc. has its principal place of business in the State of Colorado; Defendant Konica Minolta Business Solutions U.S.A., Inc. has its principal place of business in the State of Texas; Defendant Pep Boys has its principal place of business in the State of Pennsylvania; Defendant Cellstar, Inc. has its principal place of business in the State of Texas; Defendant Defendant Welded Fixtures/Insight, Inc. has its principal place of business in the State of California; Defendant Kamprite, Inc. has its principal place of business in the State of Nevada; Defendant Sumitomo Electric Interconnect Product, Inc. has its principal place of business in the State of California; Defendant Material Storage Systems, Inc. has its principal place of business in the State of Texas; Defendant Ultimate Product Group, Inc. has its principal place of business in the State of California; Defendant Chemron Corporation has its principal place of business in the State of Ohio; Defendant Kia Motors America, Inc. has its principal place of business in the State of California; Defendant Performance Team Freight System, Inc. has its principal place of business in the State of California; Defendant Rola Tape, Inc. has its principal place of business in the State of Washington; Defendant Excel Garden & Products, Inc. has its principal place of business in the State of California; Defendant DDC, Inc. has its principal place of business in the State of California; Defendant Casa Dolce Casa, USA, Inc. has its principal place of business in the State of Georgia; Paskal Lighting, Inc. has its principal place of business in the State of Louisiana; Defendant Paskal Lighting, Inc. has its principal place of business in the State of California; Defendant Insight Merchandising, Inc. has its principal place of business in the State of California; Defendant Fagerdala USA-Lompoc, Inc. has its principal place of business in the State of California; Defendant United Pallet Services, Inc. has its principal place of business in the State of California; Defendant Sketchers, Inc. has its principal place of business in the State of California; Defendant Hub Distributing, Inc. has its principal place of business in the State of California; Defendant Hypercom Corporation has its principal place of business in the State

of Arizona; Defendant Century Plaza Hotel, Inc. has its principal place of
business in the State of California; Defendant Certified International, Inc. has its
principal place of business in the State of California; Defendant Taylord Services,
Inc. has its principal place of business in the State of California; Defendant
Corporate Express, Inc. has its principal place of business in the State of
Colorado; Defendant The HON Company has its principal place of business in the
State of Iowa; Defendant Telmar Network Technology, Inc. has its principal
place of business in the State of Arizona; Defendant Commnet Supply, Inc. has
its principal place of business in the State of New Jersey; Defendant AT&T
Wireless Logistics Service, Inc. has its principal place of business in the State of
Texas; Defendant JB Biotech, Inc. has its principal place of business in the State
of California; Defendant Hemasource, Inc. has its principal place of business in
the State of Utah; Defendant Delux Media, Inc. has its principal place of business
in the State of California; Defendant Copper Brass Sales, Inc. has its principal
place of business in the State of California; Defendant Infinity Pharmaceuticals,
Inc. has its principal place of business in the State of Massachusetts; Defendant
Adamation, Inc. has its principal place of business in the State of California;
Defendant American Mailing & Printing, Inc. has its principal place of business in
the State of California; Defendant Wrigley Manufacturing, Inc. has its principal
place of business in the State of Illinois; Defendant XPEDX, Inc. has its principal
place of business in the State of Ohio; Defendant Forms and Surfaces Co. LLC
has its principal place of business in the State of California; Defendant New
Riverside Orchre Co. has its principal place of business in the State of Georgia;
Defendant Security Cameras Direct has its principal place of business in the State
of Texas; Defendant Northern Video Systems has its principal place of business in
the State of California; Defendant Saroj International, Inc. has its principal place
of business in the State of California; Defendant Sky King, Inc. has its principal
place of business in the State of California; Defendant American Apparel U.S.A.,
Inc. has its principal place of business in the State of California; Defendant
Swartz Moving and Storage, Inc. has its principal place of business in the State of
Oregon; Defendant Richard L. Jones Customhouse Broker International, Inc. has
its principal place of business in the State of Arizona; Defendant Omnitec Design,
Inc. has its principal place of business in the State of Michigan; Defendant The
Candle Factory has its principal place of business in the State of Texas; Defendant
KD Trading, Inc. has its principal place of business in the State of California;
Defendant Marshall Pottery, Inc. has its principal place of business in the State of
Texas;

(b)     "Defendants Consignees" include the following: Defendant Action
Delivery, Inc. has its principal place of business in the State of Arizona;
Defendant BH Photo, Inc. has its principal place of business in the State of New
York; Defendant Cavenders Boot City has its principal place of business in the
State of Texas; Defendant Offshore, International, Inc. has its principal place of
business in the State of Arizona; Defendant Greenfield Industries, Inc. has its
principal place of business in the State of Massachusetts; Defendant Acquiles,
Inc. has its principal place of business in the State of Texas; Defendant Delphi

7

Medical Systems, Inc. has its principal place of business in the State of Michigan;
Defendant Troy Corporation has its principal place of business in the State of
Illinois; Defendant Gamas Warehouse, Inc. has its principal place of business in
the State of Arizona; Defendant Atwood Distributing, Inc.has its principal place
of business in the State of Oklahoma; Defendant ELX Distribution E-Luxury
Com, Inc., has its principal place of business in the State of Tennessee; Defendant
Kenametal, Inc. has its principal place of business in the State of Massachusetts;
Defendant Smith-West, Inc.has its principal place of business in the State of
Arizona; Defendant Banta Corporation has its principal place of business in the
State of Wisconsin; Defendant Mantech International Corporation has its
principal place of business in the State of Virginia; Defendant The Home Depot,
Inc. has its principal place of business in the State of Georgia; Defendant
Safeway, Inc. has its principal place of business in the State of California;
Defendant Yucatan Foods, Inc. has its principal place of business in the State of
Texas; Defendant GES Exposition Services, Inc. has its principal place of
business in the State of Nevada; Defendant Noritz America Corp has its principal
place of business in the State of California; Defendant Excel Garden & Products,
Inc. has its principal place of business in the State of California; Defendant ATC
Logistics and Electronics, Inc. has its principal place of business in the State of
Texas; Defendant Naturade, Inc. has its principal place of business in the State of
California; Defendant Wellons Water Technology, Inc. has its principal place of
business in the State of Washington; Defendant Alltel has its principal place of
business in the State of Arkansas; Defendant Verint Corporation has its principal
place of business in the State of New York; Defendant Enovation, Inc. has its
principal place of business in the State of Nevada; [air force base south Carolina];
Defendant Title 9 Sports, Inc. has its principal place of business in the State of
Colorado; Defendant Tech Group Indiana, Inc. has its principal place of business
in the State of Indiana; Defendant Impulsora has its principal place of business in
the State of Arizona; Defendant Massage Warehouse, Inc. has its principal place
of business in the State of Georgia; Defendant Ikon Office Solutions has its
principal place of business in the State of Pennsylvania; Defendant University of
Maine has its principal place of business in the State of Maine; Defendant
Cavender's Boot City has its principal place of business in the State of Texas;
Defendant Pacific Office Automation, Inc. has its principal place of business in
the State of Oregon; Defendant Baja Sports, Inc. has its principal place of
business in the State of Arizona; Defendant ID Comm has its principal place of
business in the State of California; Defendant CMR, Inc., has its principal place of
business in the State of Illinois; Defendant Huck Store Fixtures, Inc. has its
principal place of business in the State of Illinois; Defendant Alpha Wire
Company has its principal place of business in the State of New Jersey;
Defendant Compliance Posters, Inc. has its principal place of business in the State
of California; Defendant Direct Line Distribution, Inc. has its principal place of
business in the State of Florida; Defendant Marchem Technologies LLC has its
principal place of business in the State of California; Defendant Auto
Warehousing, Inc. has its principal place of business in the State of California;
Defendant Movie Star Inc. has its principal place of business in the State of

Mississippi; Defendant CST/Berger Corp. has its principal place of business in the
State of Illinois; Defendant Longust Distributing, Inc. has its principal place of
business in the State of Arizona; Paskal Lighting, Inc. has its principal place of
business in the State of Louisiana; Defendant Tech Data Corp. has its principal
place of business in the State of Indiana; Defendant Border Foods, Inc. has its
principal place of business in the State of New Mexico; Defendant Shoes for
Work, Inc. has its principal place of business in the State of Oregon; Defendant
Levi Outlet, Inc. has its principal place of business in the State of Washington;
Defendant CVS Corporation has its principal place of business in the State of
Rhode Island; Defendant Westin Seattle Hotel, Inc. has its principal place of
business in the State of Washington; Defendant Peyton's Phoenix, Inc. has its
principal place of business in the State of Arizona; Defendant Federated
Department Stores, Inc. has its principal place of business in the State of Ohio;
Defendant Global Auto Processing Services, Inc. has its principal place of
business in the State of California; Defendant Corporate Express, Inc. has its
principal place of business in the State of Colorado; Office Depot, Inc. has its
principal place of business in the State of Florida; Office Liquidators, Inc. has its
principal place of business in the State of Colorado; Defendant Rohm Electronics
has its principal place of business in the State of California; Defendant Cricket
Communications, Inc. has its principal place of business in the State of
Pennsylvania; Defendant North Coast PCS, Inc. has its principal place of business
in the State of Ohio; Defendant ID Comm, Inc. has its principal place of business
in the State of California; Defendant RSL Micro Tech, Inc. has its principal place
of business in the State of Kansas; Defendant Hemasource, Inc. has its principal
place of business in the State of Utah; Defendant Tropical Shipping, Inc. has its
principal place of business in the State of Florida; Defendant AllCargoNet, Inc.
has its principal place of business in the State of Florida; Defendant Amcar
Freight, Inc. has its principal place of business in the State of Florida; Defendant
Delux Foam Service, Inc. has its principal place of business in the Province of
Ontario; Defendant Swiss Tech Precision, Inc. has its principal place of business
in the State of Idaho; Defendant FAMARCO Limited, Inc. has its principal place
of business in the State of Virginia; Defendant Old Donnelly Warehouse, Inc. has
its principal place of business in the State of Arizona; Defendant West Marine
Products, Inc. has its principal place of business in the State of Maryland;
Defendant Dallas Fort Worth International Airport Board has its principal place of
business in the State of Texas; Defendant S.P. Richards, Inc. has its principal
place of business in the State of California; Defendant Costco, Inc. has its
principal place of business in the State of Washington; Defendant Cathay
Pigments, Inc. has its principal place of business in the State of Arizona;
Defendant Security Cameras Direct has its principal place of business in the State
of Texas; Defendant Northern Video Systems has its principal place of business in
the State of California; Defendant Jaylyn Sales, Inc. has its principal place of
business in the State of New York; Defendant Ft. Lauderdale Jet Center has its
principal place of business in the State of Florida; Defendant Latitudes, Inc. has
its principal place of business in the State of Oregon; Defendant Sirva Logistics
has its principal place of business in the State of Illinois; Defendant United

9

Stationers has its principal place of business in the State of Illinois; Defendant
Gaming Partners International, U.S.A., Inc.has its principal place of business in
the State of Nevada; Defendant DRS Systems and Electronics, Inc. has its
principal place of business in the State of Missouri; Defendant Omnitec Design,
Inc. has its principal place of business in the State of Michigan; Defendant Perin-
Mowen, Inc. has its principal place of business in the State of Oregon; Defendant
Nex-Tech-Wireless has its principal place of business in the State of Kansas;
Defendant North American Antlers has its principal place of business in the State
of Oregon; Defendant American Clay Works & Supply Company has its principal
place of business in the State of Colorado;

(c)     "Defendants Third Party Payors" include the following: Defendant
Smith-West, Inc. has its principal place of business in the State of Arizona;
Defendant Pioneer Industries, Inc. has its principal place of business in the State
of New York; Defendant Yucatan Foods has its principal place of business in the
State of Texas; Defendant Kennametal, Inc. has its principal place of business in
the State of Pennsylvania; Defendant Hy-Tek Material Handling, Inc. has its
principal place of business in the State of Ohio; Defendant The HON Company
has its principal place of business in the State of Iowa; Defendant Cass Logistics,
Inc. has its principal place of business in the State of Missouri; Inamed, Inc., has
its principal place of business in the State of California; The Hillman Group, Inc.
has its principal place of business in the State of Ohio.

4.     Venue is proper in this District as each of King's Express and
Infinity Logistics has its principal places of business situated in this District, and
Defendant FedEx Freight and other Defendants do business in this District.

## Background

5.     Defendant FedEx Freight initiated, contracted for and executed
shipment of each of the 150 subject freight loads that together comprise the
subject of this Complaint under a bill of lading issued for each such respective
freight load by Defendant FedEx Freight on a document substantially conforming
to its standard, "FedEx Freight Uniform Straight Bill of Lading", a copy of which
is attached hereto as Exhibit 1.

6.     None of the subject 150 freight loads was shipped under any bill of
lading issued by any party or entity other than Defendant FedEx Freight.

7.     Each such respective bill of lading named as "Shipper" one of
Defendants Originating Shippers, each named as "Consignee" one of Defendants
Consignees; and some named third party payors.

8.     Beginning on or about February 10, 2005 through to on or about
May 13, 2005, King's Express in its capacity as a truck freight broker, and not as

a truck freight carrier, accepted tenders of each and all of the 150 subject freight loads, each under its respective FedEx Freight Uniform Straight Bill of Lading.

9.      At all times relevant to this Complaint, King's Express was in the business of carrying freight by truck directly through its own assets, personnel and operations, and Infinity Logistics was in the business of effecting truck freight shipments as a broker through third party truck carriers unrelated to it. Hereinafter King's Express and Infinity Logistics are referred to jointly as "King's Express".

10.     As to each such tender, King's Express in its capacity as a truck freight broker accepted tender of each respective load and executed each and all of the 150 subject freight load moves as required by each respective FedEx Freight Uniform Straight Bill of Lading.

11.     As to each such tender, King's Express in its capacity as a truck freight broker: (i) Contracted with a third party truck carrier unrelated to it to carry and deliver each respective subject freight load under its respective FedEx Freight Uniform Straight Bill of Lading; (ii) Confirmed that the agreed delivery had taken place consistent with such FedEx Freight Uniform Straight Bill of Lading's terms; and then (iii) Paid the contracted shipment charge to the third party truck carrier King's Express had engaged.

12.     As to each such tender, King's Express accepted the responsibility to perform the obligations required to effect complete performance under each respective FedEx Freight Uniform Straight Bill of Lading for each and all of the 150 subject freight loads, and did in fact carry out all services required to fulfill that responsibility.

13.     As to each such acceptance of responsibility by King's Express with respect to the above:

(a)     Defendant FedEx Freight requested King's Express to do so;

(b)     Defendant FedEx Freight made such request of King's Express through Defendant FedEx Freight's tender of freight to King's Express under its respective FedEx Freight Uniform Straight Bill of Lading as to one or more of the 150 subject freight loads; and

(c)     Defendant FedEx Freight effected such tender to King's Express through and by means of its agents with respect to each FedEx Freight Uniform Straight Bill of Lading, to wit, first to Defendant Aero Terra, and subsequently to Defendant Stallion Logistics.

14.     The 150 subject freight loads originated with 84 shippers and were delivered to 88 consignees. The 150 subject freight loads originated in 14 States and were delivered to 34 States and one Canadian Province.

15.     Defendant FedEx Freight's scope of service performed for its respective customers under each respective FedEx Freight Uniform Straight Bill of Lading with respect to each and all of the 150 subject freight loads encompassed load pick-up at an originating shipper's point of origin, through to and including delivery to a consignee at the point of destination, each as designated in its respective FedEx Freight Uniform Straight Bill of Lading.

16.     At all times relevant to this Complaint, Defendant FedEx Freight was required, in order to fulfill its contractual obligation and commercial commitment to each respective originating shipper, consignee, or any other third party concerned with such freight move, to either: (i) Directly as a truck freight carrier complete each respective move through Defendant FedEx Freight's own assets, personnel and operations, or (ii) Indirectly as a truck freight broker complete each such move through third party truck carriers unrelated to Defendant FedEx Freight.

17.     This contractual and commercial requirement was based: (A) Upon terms of the FedEx Freight Uniform Straight Bill of Lading; and (B) Upon standard trucking industry practice,

18.     As to each and all of the 150 subject freight loads, to effect completion of its contractual obligation and commercial commitment as to each respective FedEx Freight Uniform Straight Bill of Lading, Defendant FedEx Freight elected to act as a truck freight broker, and not as a truck freight carrier.

19.     As to the each and all of the 150 subject freight loads, Defendant FedEx Freight tendered under each respective FedEx Freight Uniform Straight Bill of Lading to Defendant Aero Terra for its services as a truck freight broker, and Defendant Aero Terra accepted each such tender to perform as a truck freight broker.

20.     At all times relevant to this Complaint, on information and belief, Defendant Aero Terra was engaged in the business of brokering freight loads for shipment by truck; worked solely as a truck freight broker; and had no capability to carry freight by truck directly through its own assets, personnel and operations.

21.     At all times relevant to this Complaint, on information and belief, Defendant FedEx Freight knew that Defendant Aero Terra worked solely as a truck freight broker, and not as a truck freight carrier.

22. Because at all times relevant to this Complaint, on information and belief, it knew that Defendant Aero Terra worked solely as a truck freight broker, Defendant FedEx Freight:

(a) Had actual and direct knowledge that service performed for its respective customers each respective FedEx Freight Uniform Straight Bill of Lading as to each and all 150 subject freight loads could not and would not be completed without the performance of at least one additional party "downstream" of Defendant Aero Terra in the "chain of tender";

(b) Had actual and direct knowledge that at least one truck freight carrier, and possibly one or more additional truck freight brokers in the event Defendant Aero Terra did not directly tender to a truck freight carrier, would need to be and was in fact engaged as to each and all of the 150 subject freight loads to effect complete performance under each respective FedEx Freight Uniform Straight Bill of Lading;

(c) Intended, desired and knowingly acted to bring about a circumstance in the case of each and all 150 subject freight loads where at least one additional party "downstream" of Defendant Aero Terra in the "chain of tender" would have to be so engaged, and was in fact so engaged, to effect complete performance under each respective FedEx Freight Uniform Straight Bill of Lading; and

(d) Intended, desired and knowingly acted to bring about the circumstance in the case of each and all 150 subject freight loads which did in fact take place, in which each of Defendant Aero Terra, then Defendant Stallion Logistics, and then King's Express was engaged in the "chain of tender" which did in fact occur as to each respective FedEx Freight Uniform Straight Bill of Lading.

23. With respect to each and all of the 150 subject freight loads, on information and belief, neither Defendant FedEx Freight, Defendant Aero Terra, nor Defendant Stallion Logistics stated to: (i) Each other; (ii) King's Express; or (iii) Any originating shipper, consignee, or any other third party concerned with such freight move, either: (A) By its respective FedEx Freight Uniform Straight Bill of Lading or any other contractual documentation, or (B) By oral statement, or any other action:

(a) That Defendant FedEx Freight disclaimed responsibility for successful execution of its respective FedEx Freight Uniform Straight Bill of Lading from originating shipper pick-up site to consignee delivery site per promised schedule and other terms;

(b) That Defendant FedEx Freight acted as a limited provider of discrete, isolated or fragmented transactions or operations that fell short of the

entire freight move described in each respective FedEx Freight Uniform Straight
Bill of Lading;

(c) That Defendant FedEx Freight disclaimed any or all further
contractual obligations or commercial commitments to originating shippers,
consignees or any other third party concerned with such freight move, once, and
after, it had: (A) Successfully tendered the respective freight load to a truck
freight broker, truck freight carrier, or another third party immediately
"downstream" from it in the "chain of tender", to wit, Defendant Aero Terra, as to
the 150 subject freight loads, and then (B) Made payment to said party, to wit,
Defendant Aero Terra;

(d) That Defendant FedEx Freight disclaimed that Defendant Aero Terra
was or would be acting as its agent under each respective FedEx Freight Bill of
Lading;

(e) That Defendant FedEx Freight disclaimed that any party
"downstream" of Defendant Aero Terra in the "chain of tender" was or would be
acting on behalf of and as agent of Defendant FedEx Freight for the purpose of
effecting complete performance under each respective FedEx Freight Uniform
Straight Bill of Lading for the 150 subject freight loads; or

(f) That Defendant FedEx Freight limited the scope of such agency
other than to require reasonable arrangements customary in the truck freight
broker and truck freight carrier communities on the parts of either (i) Defendant
Aero Terra as its agent under the FedEx Freight Uniform Straight Bill of Lading,
or (ii) any of Defendant FedEx Freight's and Defendant Aero Terra's agents
"downstream" from Defendant Aero Terra in the "chain of tender", to wit,
Defendants Stallion Logistics, King's Express, third party truck freight carriers
that King's Express eventually selected, or any other party that might be called
upon to effect complete performance of each respective FedEx Freight Uniform
Straight Bill of Lading.

24. On information and belief, Defendant Aero Terra, after acceptance
of each such tender of the 150 subject freight loads under its respective FedEx
Freight Uniform Straight Bill of Lading, thereafter tendered each and all of them
to Defendant Stallion Logistics, and Defendant Stallion Logistics accepted each
such tender.

25. At all times relevant to this Complaint, on information and belief,
Defendant Stallion Logistics was engaged in the business of brokering freight
loads for shipment by truck; worked solely as a broker; and had no capability to
carry freight by truck directly through its own assets, personnel and operations.

26.     Because at all times relevant to this Complaint, on information and belief, it knew that Defendant Stallion Logistics worked solely as a truck freight broker, Defendant Aero Terra:

(a)     Had actual and direct knowledge that service performed for Defendant FedEx Freight's respective customers under each respective FedEx Freight Uniform Straight Bill of Lading as to each and all 150 subject freight loads could not and would not be completed without the performance of at least one additional party "downstream" of Defendant Stallion Logistics in the "chain of tender";

(b)     Had actual and direct knowledge that at least one truck freight carrier, and possibly one or more additional truck freight brokers in the event Defendant Stallion Logistics did not directly tender to a truck freight carrier, would need to be and was in fact engaged as to each and all of the 150 subject freight loads to effect complete performance under each respective FedEx Freight Uniform Straight Bill of Lading;

(c)     Intended, desired and knowingly acted to bring about a circumstance in the case of each and all 150 subject freight loads where at least one additional party "downstream" of Defendant Stallion Logistics in the "chain of tender" would have to be so engaged and was in fact so engaged, to effect complete the performance under each respective FedEx Freight Uniform Straight Bill of Lading; and

(d)     Intended, desired and knowingly acted to bring about the circumstance in the case of each and all 150 subject freight loads which did in fact take place, in which each of Defendant FedEx Freight, then Defendant Aero Terra, then Defendant Stallion Logistics, and then King's Express was engaged in the "chain of tender" which did in fact occur as to each respective FedEx Freight Uniform Straight Bill of Lading.

27.     With respect to each and all of the 150 subject freight loads, on information and belief, neither Defendant FedEx Freight, Defendant Aero Terra, nor Defendant Stallion Logistics stated to: (i) Each other; (ii) King's Express; or (iii) Any originating shipper, consignee, or any other third party concerned with such freight move, either: (A) By its respective FedEx Freight Uniform Straight Bill of Lading or any other contractual documentation, or (B) By oral statement, or any other action:

(a)     That Defendant FedEx Freight disclaimed responsibility for its successful execution of its respective FedEx Freight Uniform Straight Bill of Lading from originating shipper pick-up site to consignee delivery site per promised schedule and other terms;

(b)    That either Defendant Aero Terra or Defendant Stallion Logistics made any disclaimer of responsibility for its respective role in the successful execution of each respective FedEx Freight Uniform Straight Bill of Lading;

(c)    That either Defendant FedEx Freight, Defendant Aero Terra or Defendant Stallion Logistics disclaimed any or all further contractual obligations or commercial commitments to originating shippers, consignees or any other third party concerned with such freight move, once, and after, Defendant FedEx, Defendant Aero Terra or Defendant Stallion Logistics, respectively, had: (A) Successfully tendered the respective freight load to a truck freight broker, truck freight carrier, or another third party immediately "downstream" from it in the "chain of tender"; to wit: (i) Defendant FedEx Freight tender to Defendant Aero Terra, (ii) Defendant Aero Terra tender to Defendant Stallion Logistics, or (iii) Defendant Stallion Logistics tender to King's Express, respectively, as to each of the 150 subject freight loads; and then (B) Made payment to said party immediately "downstream" from it, to wit: (i) Defendant FedEx Freight making payment to Defendant Aero Terra, (ii) Defendant Aero Terra making payment to Defendant Stallion Logistics, or (iii) Defendant Stallion Logistics making payment to King's Express, respectively;

(d)    That Defendant FedEx Freight disclaimed that Defendant Aero Terra was or would be acting as its agent under each respective FedEx Freight Uniform Straight Bill of Lading;

(e)    That either Defendant Aero Terra or Defendant Stallion Logistics disclaimed that Defendant Stallion Logistics or King's Express, respectively, was or would be acting as its agent under each respective FedEx Freight Uniform Straight Bill of Lading;

(f)    That Defendant FedEx Freight disclaimed that any party "downstream" of Defendant Aero Terra in the "chain of tender" was or would be acting on behalf of or as agent of Defendant FedEx Freight for the purpose of effecting completed performance under each respective FedEx Freight Uniform Straight Bill of Lading for the 150 subject freight loads;

(g)    That either Defendant Aero Terra or Defendant Stallion Logistics disclaimed that any party "downstream" of Defendant Aero Terra or Defendant Stallion Logistics, respectively, in the "chain of tender" was or would be acting on behalf of or as agent of Defendant FedEx Freight or on behalf of or as agent of either Defendant Aero Terra or Defendant Stallion Logistics, respectively, for the purpose of effecting completed performance under each respective FedEx Freight Uniform Straight Bill of Lading for the 150 subject freight loads;

(h)    That Defendant FedEx Freight limited the scope of agency as to any party "downstream" of Defendant Aero Terra other than to require reasonable arrangements customary in the truck freight broker and truck freight carrier

16

communities on the parts of either (i) Defendant Aero Terra as its agent under the FedEx Freight Uniform Straight Bill of Lading, or (ii) any of Defendant FedEx Freight's and Defendant Aero Terra's agents "downstream" from Defendant Aero Terra in the "chain of tender", to wit, Defendants Stallion Logistics, King's Express, third party truck freight carriers that King's Express eventually selected, or any other party that might be called upon to effect completion of each respective FedEx Freight Uniform Straight Bill of Lading; or

(i)     That either Defendant Aero Terra or Defendant Stallion Logistics limited the scope of agency as to any party "downstream" of Defendant Aero Terra or "downstream" of Defendant Stallion Logistics other than to require reasonable arrangements customary in the truck freight broker and truck freight carrier communities on the parts of either (i) Defendant Stallion Logistics or King's Express, respectively, as its agent under the FedEx Freight Uniform Straight Bill of Lading, or (ii) any of Defendant FedEx Freight's, Defendant Aero Terra's, Defendant Stallion Logistics' or King's Express' agents "downstream" from Defendant Aero Terra in the "chain of tender", to wit, Defendants Stallion Logistics, King's Express, third party truck freight carriers King's Express eventually selected, or any other party that might be called upon to effect completion of each respective FedEx Freight Uniform Straight Bill of Lading.

28.     As to the 150 subject freight loads, Defendant Stallion Logistics tendered each and all of them to King's Express for its services as a truck freight broker under its respective FedEx Freight Uniform Straight Bill of Lading, and King's Express accepted each such tender.

29.     On information and belief, Defendant FedEx Freight received payment timely and in full from an originating shipper, consignee or a third party under each respective FedEx Freight Uniform Straight Bill of Lading it had issued as to the 150 subject freight loads.

30.     On information and belief, Defendant FedEx Freight directed payment to Defendant Aero Terra in full under each respective FedEx Freight Uniform Straight Bill of Lading with respect to each and all of the 150 subject freight loads, albeit in an irregular manner as hereinafter set forth.

31.     On information and belief, Defendant Aero Terra received payment from Defendant FedEx Freight timely and in full under each respective FedEx Freight Uniform Straight Bill of Lading with respect to each and all of the 150 subject freight loads, and said funds were diverted to parties or entities other than Defendant Aero Terra.

32.     On information and belief, Defendant Aero Terra made substantially no payment per applicable contractual documentation to Defendant Stallion Logistics on any FedEx Freight Uniform Straight Bill of Lading with respect to any of the 150 subject freight loads.

33. On information and belief, Defendant Stallion Logistics received neither from Defendant FedEx Freight nor from any other party any payment whatsoever under any FedEx Freight Uniform Straight Bill of Lading with respect to any of the 150 subject freight loads.

34. Defendant Stallion Logistics made no payment whatsoever to King's Express on any FedEx Freight Uniform Straight Bill of Lading with respect to any of the 150 subject freight loads.

35. King's Express received neither from Defendant Stallion Logistics, nor from Defendant FedEx Freight, nor from Defendant Aero Terra, nor from any other party, any payment whatsoever under any of the respective FedEx Freight Uniform Straight Bill of Ladings with respect to any of the 150 subject freight loads.

36. At all times relevant to this Complaint, standard trucking industry practice held: (i) That there was no practical reason for a shipper, consignee or intermediary to use a sequence of more than one truck freight broker to effect a freight move by truck, and (ii) That such "double brokering" on other than an accidental or incidental basis was considered a waste of resources to whomever was paying for a particular truck freight move.

37. Notwithstanding this standard trucking industry practice, Defendant FedEx Freight, as to each and all of the 150 subject freight loads, effected a "quadruple brokering" sequence under each FedEx Freight Uniform Straight Bill of Lading.

38. King's Express, in its capacity as a truck freight broker, accepted tender of each respective load and executed the freight load move as required by its respective FedEx Freight Uniform Straight Bill of Lading as to each and all of the 150 subject freight loads.

39. At all times relevant to this Complaint, on information and belief, Defendant FedEx Freight had policies that defined qualification standards as to financial stability, liquidity, and insurance status of those companies with whom it would conduct business as either a truck freight carrier or as a truck freight broker under a FedEx Freight Uniform Straight Bill of Lading.

40. On information and belief, with respect to each and all of the subject 150 freight loads, Defendant FedEx Freight conducted: (i) Selection of truck freight brokers and execution of truck freight moves made through such truck freight brokers, (ii) Acceptance of FedEx Freight Uniform Straight Bill of Lading and related contractual documentation as precondition to payment, and (iii) Remittance of funds to Defendant Aero Terra pursuant to contractual documentation.

41.     Despite having received direct and actual notice in the case of
some of its agents and employees, and/or constructive notice in the case of others,
that Defendant Aero Terra was subject to a material degree of risk of financial
distress up to and including insolvency, Defendant FedEx Freight nevertheless
continued to tender truck freight to Defendant Aero Terra as to each and all of the
150 subject freight loads as to each FedEx Freight Uniform Straight Bill of
Lading, and continued to remit funds in ostensive payment to Defendant Aero
Terra.

42.     At no time relevant to this Complaint did Defendant FedEx Freight
or Defendant Aero Terra or any of their respective employees, agents or officers,
communicate by way of caution, warning or disclosure to King's Express, or, on
information and belief, did either of them or any of their respective employees,
agents or officers communicate by way of caution, warning or disclosure to any of
the other Defendants or to any other party or individual, any of the circumstances
described in the above five Paragraphs regarding facts described therein of which
they or each of them had actual, direct and constructive notice.

43.     King's Express accepted tender of each and all of the 150 subject
freight loads in reliance on the reasonable belief that it was conducting business
with Defendant FedEx Freight in so doing.

44.     King's Express reasonably believed that each such load was
tendered to it under its respective FedEx Freight Uniform Straight Bill of Lading.

45.     When King's Express accepted tender of each and all of the 150
subject freight loads, it had reason to believe and did in fact believe, that
Defendant Aero Terra and Defendant Stallion Logistics were each respectively
acting as Defendant FedEx Freight's agent for the specific and limited purpose of
effecting complete performance under each respective FedEx Freight Uniform
Straight Bill of Lading and related contractual documentation, and that said
Defendant Aero Terra and said Defendant Stallion Logistics had been so selected
as agents by Defendant FedEx Freight for that purpose, and that therefore King's
Express would be acting as Defendant FedEx Freight's agent for purpose of
effecting complete performance of each and all of the 150 subject freight loads
under each respective FedEx Freight Uniform Straight Bill of Lading.

46.     But for the fact that each and all of the 150 subject freight loads
had been tendered to King's Express under its respective FedEx Freight Uniform
Straight Bill of Lading, King's Express, Inc. would not have accepted any or all
of the 150 subject freight loads tendered to it by Defendant Stallion Logistics.

47.     At all times relevant to this Complaint, there existed a standard
trucking industry practice under which the issuer of the bill of lading who had
tendered a freight load to a truck freight broker required as a precondition of

payment thereon the physical receipt of the original bill of lading, physically signed by the consignee to acknowledge actual receipt of the freight load, before such issuer would remit payment to that truck freight broker to whom such bill of lading issuer had tendered the load in the first place.

48. At all times relevant to this Complaint, the purpose of this standard trucking industry practice was to protect the integrity of remittances flows among shippers, consignees, other third parties interested in particular freight move under a specified bill of lading, truck freight carriers, truck freight brokers and other intermediaries, by: (i) Establishing review of the original bill of lading, physically signed by the consignee, in a sequence that corresponded to the order of the "chain of tender", and corresponding respective accountabilities among the parties comprising such "chain of tender", and (ii) Conditioning payments in such "chain of tender" upon actual, physical receipt of such original consignee-signed bill of lading.

49. On information and belief, it was each of Defendant FedEx Freight's and Defendant Aero Terra's respective internal policy to observe and abide by this standard trucking industry practice, or a similar protocol, in order to protect the integrity of documentation receipt and remittances flows under a bill of lading.

50. Notwithstanding these facts, on information and belief, neither Defendant FedEx Freight nor Defendant Aero Terra conducted its respective documentation receipt and remittance activities in accordance with this standard trucking industry practice with respect to all or a material number of the 150 subject freight loads.

51. To the contrary, on information and belief, the shortened and truncated collection cycle between Defendants FedEx Freight and Aero Terra with respect to all or a material number of the 150 subject freight loads under each FedEx Freight Uniform Straight Bill of Lading resulted directly from each of said Defendant's respective failures to observe the standard trucking industry practice on documentation receipt and payment remittances, and their intentional and knowing departures therefrom.

52. At all times relevant to this Complaint, approximately 25 to 30 days would have elapsed between (i) Tender of the freight load by bill of lading issuer to the single truck freight broker, and (ii) Remittance of payment by such bill of lading issuer to such single truck freight broker, where (iii) The above-described standard trucking industry practice was observed as to documentation receipt and payment remittance activities, and (iv) Bill of lading issuer used, per trucking industry standard practice, a single truck freight broker to identify, contract for, and tender such freight load to a truck carrier.

53.    At all times relevant to this Complaint, approximately 40 days or more would have elapsed between (i) Tender of freight load by bill of lading issuer to the first truck freight broker in addition to Defendant FedEx Freight involved in the sequence, and (ii) Remittance of payment by such bill of lading issuer to such first truck freight broker in addition to Defendant FedEx Freight involved in the sequence, where (iii) The above-described standard trucking industry practice was observed as to documentation receipt and payment remittance activities, and (iv) Bill of lading issuer, acting in a capacity as truck freight broker, were to have engaged through tender three truck freight brokers in addition to itself in a sequence where such bill of lading issuer acted as the first-in-sequence truck freight broker to identify, contract for and tender a freight load to a truck carrier.

54.    Notwithstanding this standard trucking industry practice as to documentation receipt and payment remittance activities, on information and belief, in the case of all or a material number of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading, approximately only seven (7) days actually did, in fact, elapse between (i) Defendant FedEx Freight's tender of the freight load as bill of lading issuer to Defendant Aero Terra, and (ii) Defendant FedEx Freight's remittance of payment as such bill of lading issuer to Defendant Aero Terra.

55.    On information and belief, Defendants FedEx Freight's and Aero Terra's respective failures to observe such standard trucking industry practice were intended by each of them, coordinated between each of their operations, and they were in fact acting in concert with each other in the case of all or a material number of the 150 subject freight loads under each FedEx Freight Uniform Straight Bill of Lading.

56.    On information and belief, by each of their departures from standard trucking industry practice regarding documentation receipt and payment remittances in their respective, coordinated and concerted actions described above, Defendant FedEx Freight and Defendant Aero Terra thereby had the actual effect of depriving King's Express of the benefits of integrity protections and "early warning" of irregularities "upstream" from King's Express in the "chain of tender" that King's Express would otherwise have received if the standard trucking industry practice as to documentation receipt and payment remittance activities had been observed by Defendant FedEx Freight and Defendant Aero Terra.

57.    On information and belief, in the case of all or a material number of the 150 subject freight loads, the sole purpose, intent and design on Defendant FedEx Freight's and Defendant Aero Terra's respective parts in failing to observe standard trucking industry practice regarding documentation receipt and payment remittances by their respective, coordinated and concerted actions described above, was to deprive King's Express and possibly other parties "downstream" of

Defendant Aero Terra in the "chain of tender", of the integrity protections and "early warning" described above.

58.     In the case of all of the 150 subject freight loads, Defendant FedEx Freight: i) Was under no contractual, regulatory or reasonable commercial expectation to remit payment to Defendant Aero Terra in a manner other than according to the standard trucking industry practice as to documentation receipt and payment remittance activities; and ii) Received no legitimate business benefit whatsoever by the documentation receipt and payment remittance activities practice that it actually followed in the case of each and all of the 150 subject freight loads under each respective FedEx Freight Bill of Lading.

59.     The following sequence of actions manifest Defendant FedEx Freight's realization and acknowledgment that the financial irregularities, departures from standard trucking industry practice in its "quadruple brokering", and departures from standard trucking industry practice as to documentation receipt and payment remittance activities that reduced remittance protections and "early warning" King's Express would otherwise have enjoyed did indeed take place as to each of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading:

(a)     On or about May 10, 2005, King's Express contacted Defendant FedEx Freight and requested from it payment in regard to the non-payment on the 150 subject freight loads, and was informed that Defendant FedEx Freight had no obligation to King's Express with respect to King's Express's performance of each respective FedEx Freight Uniform Straight Bill of Lading;

(b)     At some time thereafter, on information and belief, Defendant FedEx Freight ceased to tender loads or to otherwise do business with Defendant Aero Terra, but thereafter began to tender multiple freight loads to a truck freight broker company called Williams & Gibbs whose ownership, location and employees were the same as Defendant Aero Terra;

(c)     On or about May 17, 2005, King's Express renewed its request to Defendant FedEx Freight for payment, and Defendant FedEx Freight again informed King's Express that Defendant FedEx Freight had no obligation to King's Express with respect to King's Express performance of the FedEx Freight Uniform Straight Bill of Lading as to the 150 subject freight loads; and

(d)     At some time thereafter, on information and belief, Defendant FedEx Freight ceased to tender loads or to otherwise do business with said Williams and Gibbs.

60.     At some time thereafter, on information and belief, Defendant FedEx Freight made changes in its policy criteria defining those businesses with whom it would conduct business as truck freight carriers or truck freight brokers,

or the circumstances and procedures under which Defendant FedEx Freight would engage such truck freight carriers or truck freight brokers.

Count I – Breach of Contract
(against Defendant FedEx Freight)

61.     Plaintiffs reallege and restate the allegations set forth in Paragraphs 1 through 60 as Paragraph 61 of Count I.

62.     Defendant FedEx Freight, when it tendered each and all of the 150 subject freight loads to Defendant Aero Terra, had actual, direct or constructive knowledge that effecting complete performance of each respective FedEx Freight Uniform Straight Bill of Lading could not take place without Defendant Aero Terra engaging the services of at least one or more additional parties, because Defendant FedEx Freight knew or should have known that: (i) Defendant Aero Terra was a truck freight broker and not a truck freight carrier; and (ii) Each FedEx Freight Uniform Straight Bill of Lading provided for delivery by truck of each subject freight load to a consignee at a stated location.

63.     By its actions and under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation, Defendant FedEx Freight authorized Defendant Aero Terra to act on Defendant FedEx Freight's behalf with respect to effecting complete performance as to each and all of the 150 subject freight loads under each respective FedEx Freight Bill of Lading; which authorization extended to reasonable arrangements customary in the truck freight broker and truck freight carrier communities for delivery by truck of each subject freight load to a consignee at a stated location.

64.     When Defendant Aero Terra tendered the 150 subject freight loads to Defendant Stallion Logistics under each respective FedEx Freight Uniform Straight Bill of Lading, it did so as agent for Defendant FedEx Freight for the specific and limited purpose of effecting complete performance of each respective FedEx Freight Uniform Straight Bill of Lading.

65.     As a result thereof, Defendant FedEx Freight and Defendant Stallion Logistics had a contractual relationship with each other under each respective FedEx Freight Uniform Straight Bill of Lading for the specific and limited purpose of effecting complete performance on each and all of the 150 subject freight loads.

66.     Because Defendants FedEx Freight and Aero Terra knew that Defendant Stallion Logistics was a truck freight broker and not a truck freight carrier when the 150 subject freight loads were tendered to Defendant Stallion Logistics, said Defendants knew that in order to effect complete performance of each respective FedEx Freight Uniform Straight Bill of Lading, said Defendant

Stallion Logistics would have to engage the services of at least one or more additional parties or entities.

67.   Defendant Stallion Logistics was acting on behalf of Defendants FedEx Freight and Aero Terra when it made arrangements to complete performance as to each of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading; which authorization extended to reasonable arrangements customary in the truck freight broker and truck freight carrier communities for delivery by truck of each subject freight load to a consignee at a stated location. .

68.   As a result of the successive authorizations by Defendant FedEx Freight of Defendant Aero Terra, and then by Defendant Aero Terra of Defendant Stallion Logistics, Defendant FedEx Freight and Defendant Stallion Logistics each had a contractual relationship with the other, under each respective FedEx Freight Uniform Straight Bill of Lading for the specific and limited purpose of effecting completed performance on each and all of the 150 subject freight loads.

69.   Defendant Stallion Logistics, on information and belief, when it tendered each of the 150 subject freight loads to King's Express, had actual and direct knowledge that Plaintiff King's Express's effecting complete performance of each respective FedEx Freight Uniform Straight Bill of Lading would require King's Express to engage the services of at least one or more additional parties, because Defendant Stallion Logistics knew that King's Express would effect complete performance under some or all of the 150 subject freight loads under its respective FedEx Freight Uniform Straight Bill of Lading in King's Express's capacity as a truck freight broker and not as a truck freight carrier.

70.   As a result of said Defendant FedEx Freight's, Defendant Aero Terra's and Defendant Stallion Logistics' respective actions, the tenders to and resulting contracts between each of them and King's Express was authorized by Defendants FedEx Freight, Aero Terra, and Stallion Logistics under each respective FedEx Freight Uniform Straight Bill of Lading, to which each of them was a contract party.

71.   As a result of the authorizations by said Defendants, Defendant FedEx Freight and King's Express had a contractual relationship with each other under each respective FedEx Freight Uniform Straight Bill of Lading, for the specific and limited purpose of effecting complete performance on each and all of the 150 subject freight loads.

72.   King's Express acted on behalf of Defendant FedEx Freight as its agent for the specific and limited purpose of effecting completion on each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

73.     King's Express acted on behalf of Defendant Aero Terra, Defendant Stallion Logistics, Defendants Originating Shippers and Defendants Consignees as agent of each of them for the specific and limited purpose of effecting completion on each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

74.     As to each and all of the 150 subject freight loads, there was no provision in the respective FedEx Freight Uniform Straight Bill of Lading, in any other contractual document provided by Defendant FedEx Freight or by any of the other Defendants, or in any oral communication or by any other action directed to King's Express either directly or indirectly from Defendant FedEx Freight or from any of the other Defendants, that stated to King's Express or to any Defendant herein, or to any other party or entity whatsoever that: (i) King's Express was not an agent of Defendant FedEx Freight, Defendant Aero Terra, or Defendant Stallion Logistics for the purposes of each FedEx Freight Uniform Straight Bill of Lading or related contractual documentation, or that (ii) Neither Defendant Aero Terra nor Defendant Stallion Logistics was an agent of Defendant FedEx Freight, or that (iii) Defendant Stallion Logistics was not an agent of Defendant Aero Terra.

75.     King's Express acted on behalf of Defendant Aero Terra, Defendant Stallion Logistics, Defendants Originating Shippers, Defendants Consignees and Defendants Third Party Payors as agent for all and each of them for the specific and limited purpose of effecting complete performance as to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

76.     All conditions precedent to each and all of respective Defendants' contractual obligations in favor of King's Express have been performed or have occurred.

77.     As to each and all of the 150 subject freight loads, King's Express has rendered full performance and conferred all benefits due to Defendant FedEx Freight under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation, Defendant FedEx Freight has received the full performance and all related benefits.

78.     As to each and all of the 150 subject freight loads, King's Express in its capacity as a truck freight broker pursuant to the FedEx Freight Uniform Straight Bill of Lading: (i) Contracted with a third party truck carrier unrelated to itself to carry each such freight load per its respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation; (ii) Monitored such truck freight carrier's execution thereof, and confirmed that the agreed delivery had taken place per contractual documentation; and then (iii) Paid the contracted shipment charge to such unrelated third party truck carrier timely and in full upon such confirmation.

25

79.     As to each and all of the 150 subject freight loads, there has been no allegation of damage to freight or any other reason to offset, claim against or otherwise reduce or negate King's Express's claims with respect to any of the 150 subject freight loads.

80.     Despite repeated demands by King's Express directed to Defendant FedEx Freight for payment of monies owed to said King's Express by said Defendant FedEx Freight, said Defendant FedEx Freight has refused to pay said monies, and continues in its refusal to pay said monies that it owes to King's Express as to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

WHEREFORE, Plaintiffs demand judgment against Defendant FedEx Freight in excess of the sum of $258,965.00, together with interest and costs.

Count II – Quantum Meruit
(against Defendant FedEx Freight)

81.     Plaintiffs reallege and restate the allegations in Paragraphs 1 through 80 as Paragraph 81 of Count II.

82.     Plaintiffs plead this Count II, Quantum Meruit, in the alternative.

83.     Defendant FedEx Freight knew or should have known that, as to each tender to King's Express with respect to each of the 150 subject freight loads, King's Express was acting in its capacity as a truck freight broker and as such would render the performance of effectuating delivery of each and all of the 150 subject freight loads under its respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation.

84.     As to each and all of the 150 subject freight loads, King's Express has rendered full performance and conferred all benefits due to Defendant FedEx Freight under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation, and Defendant FedEx Freight has received the full performance and all related benefits.

85.     FedEx Freight knew or should have known that King's Express would be entitled to compensation for the services rendered to them by King's Express with respective to each and all of their interests under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation.

86.     Despite repeated demands by King's Express directed to Defendant FedEx Freight for payment of monies owed to said King's Express by

said Defendant FedEx Freight, said Defendant FedEx Freight has refused to pay said monies, and continues in its refusal to pay said monies that it owes to King's Express as to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

WHEREFORE, Plaintiffs demand judgment against Defendant FedEx Freight in excess of the sum of $258,965.00, together with interest and costs.

Count III – Unjust Enrichment<br>(against Defendant FedEx Freight)

87.     Plaintiffs reallege and restate the allegations in Paragraphs 1 through 86 as Paragraph 87 of Count III.

88.     Plaintiffs plead this Count III, Unjust Enrichment, in the alternative.

89.     Defendant FedEx Freight executed contractual documentation and was a party to each respective FedEx Freight Uniform Straight Bill of Lading as to each and all of the 150 subject freight loads.

90.     As to each and all of the 150 subject freight loads, King's Express has rendered full performance and conferred all related benefits due to Defendant FedEx Freight under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation entered into with said Defendant FedEx Freight, and Defendant FedEx Freight has received such full performance and all related benefits.

91.     Despite repeated demands by King's Express directed to Defendant FedEx Freight for payment of monies owed to said King's Express by said Defendant FedEx Freight, said Defendant FedEx Freight has refused to pay said monies, and continues in its refusal to pay said monies that it owes to King's Express as to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

WHEREFORE, Plaintiffs demand judgment against Defendant FedEx Freight in excess of the sum of $258,965.00, together with interest and costs.

Count IV – Promissory Estoppel<br>(against Defendant FedEx Freight)

92.     Plaintiffs reallege and restate the allegations in Paragraphs 1 through 91 as its allegations in Paragraph 92 of Count IV.

93.     Plaintiffs plead this Count IV, Promissory Estoppel, in the alternative.

94.     Defendant FedEx Freight made promises to each and all parties and entities "downstream" of Defendant FedEx Freight in the "chain of tender" relating to the 150 subject freight loads.

95.     Defendant FedEx Freight made such promises to King's Express through parties and entities "downstream" of Defendant FedEx Freight in the "chain of tender" that were Defendant FedEx Freight's agents for the specific and limited purpose of effecting complete performance of each respective FedEx Freight Uniform Straight Bill of Lading as to each and all of the 150 subject freight loads.

96.     Defendant FedEx Freight knew or should have known that one of these parties and entities was Defendant Aero Terra, to whom Defendant FedEx Freight made direct tender of each and all of the 150 freight loads. Because Defendant FedEx Freight knew or should have known that Defendant Aero Terra was a truck freight forwarder and not a truck freight carrier, Defendant FedEx Freight knew or should have known that to effect complete performance under each respective FedEx Freight Uniform Straight Bill of Lading, said Defendant Aero Terra would have to engage at least one additional party or entity "downstream" of Defendant Aero Terra in the "chain of tender" to do so. Defendant FedEx Freight had actual, direct or constructive knowledge that the following parties and entities would be engaged and were in fact engaged to effect complete performance under each respective FedEx Freight Uniform Straight Bill of Lading: (i) Defendant Stallion Logistics, (ii) King's Express, and (iii) each truck freight carrier that executed a respective freight move on the 150 subject freight loads whose performance King's Express: (A) Contracted for, (B) Monitored to completion, and (C) Paid for timely and in full after receiving evidence of completed delivery.

97.     To induce King's Express to perform the above-described respective acts of assistance in completing the 150 subject freight loads on behalf of Defendant FedEx Freight's respective originating shippers, consignees and other third party customers, Defendant FedEx Freight promised to do one of two things in response to each such act of assistance: (i) Arrange King's Express's compensation through the "upstream" party tendering to it, or through another third party, and/or (ii) Pay King's Express's compensation directly itself.

98.     Defendant FedEx Freight gave the above-described promises to King's Express for the sole purpose of inducing King's Express to fulfill Defendant FedEx Freight's contractual obligations and commercial commitments to its originating shippers, consignees or other third party customers under each respective FedEx Freight Bill of Lading.

99.     As a result of Defendant FedEx Freight's above-described promises to King's Express, and in detrimental reliance thereon, King's Express by rendering the above-described acts of assistance to Defendant FedEx Freight, effected complete performance of the terms of Defendant FedEx Freight's contractual obligation under each FedEx Freight Uniform Straight Bill of Lading and related contractual documentation as to each of the 150 subject freight loads.

100.     By reason of (i) the promises Defendant FedEx Freight made to King's Express, together with (ii) King's Express's detrimental reliance thereon, and (iii) Defendant FedEx Freight's receipt of full performance and all benefits described below, King's Express is entitled to be paid by Defendant FedEx Freight for its services that effected complete performance of all services provided for under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation as to each of the 150 subject freight loads.

101.     As to each and all of the 150 subject freight loads, King's Express has rendered full performance and conferred all benefits due to Defendant FedEx Freight under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation, and Defendant FedEx Freight has received such full performance and all related benefits.

102.     Despite repeated demands by King's Express directed to Defendant FedEx Freight for payment of monies owed to said King's Express by said Defendant FedEx Freight, said Defendant FedEx Freight has refused to pay said monies, and continues in its refusal to pay said monies that it owes to King's Express.

WHEREFORE, Plaintiffs demand judgment against Defendant FedEx Freight in excess of the sum of $258,965.00, together with interest and costs.

## Count V – Breach of Contract
(against Defendant Aero Terra and Defendant Stallion Logistics)

103.     Plaintiffs reallege and restate the allegations set forth in Paragraphs 1 through 102 as Paragraph 103 of Count V.

104.     By its tender to Defendant Aero Terra as described above, Defendant FedEx Freight authorized said Defendant Aero Terra to act on its behalf and as its agent for the limited and specific purpose of effecting complete performance with respect to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

105.     When Defendant Aero Terra tendered the 150 subject freight loads to Defendant Stallion Logistics as agent for the limited and specific purpose of effecting complete performance under each respective FedEx Freight Uniform

Straight Bill of Lading as described above, said Defendant Aero Terra acted within the terms of authorization and scope of agency intended by Defendant FedEx Freight under each respective FedEx Freight Uniform Straight Bill of Lading with respect to said Defendant Aero Terra.

106.    As a result of the above-described actions, Defendant FedEx Freight and Defendant Stallion Logistics had a contractual relationship with each other under each respective FedEx Freight Uniform Straight Bill of Lading for the specific and limited purpose of effecting completion on each and all of the 150 subject freight loads.

107.    As a result of the above-described actions, Defendant Stallion Logistics was acting on behalf of Defendants FedEx Freight and Aero Terra, and as agent for each of them, for the specific and limited purpose of effecting complete performance as to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading when it made tender to King's Express of each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

108.    With respect to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading, Defendant Stallion Logistics' above-described actions in tendering to King's Express were within the terms of Defendant FedEx Freight's and Defendant Aero Terra's respective terms of authorization and scope of agency conferred on Defendant Stallion Logistics with respect thereto as described above.

109.    As a result of the above-described successive authorizations by Defendant FedEx Freight of Defendant Aero Terra, and then by Defendant Aero Terra of Defendant Stallion Logistics, said Defendant FedEx Freight, said Defendant Aero Terra and said Defendant Stallion Logistics each had a contractual relationship with the other under each respective FedEx Freight Uniform Straight Bill of Lading for the specific and limited purpose of effecting completed performance on each and all of the 150 subject freight loads.

110.    When Defendant Stallion Logistics tendered the 150 subject freight loads to King's Express as agent of Defendant FedEx Freight and Defendant Aero Terra for the specific and limited purpose of effecting complete performance as to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading as described above, said Defendant Stallion Logistics was acting within the terms of authorization and scope of agency intended by Defendant FedEx Freight and Defendant Aero Terra under each respective FedEx Freight Uniform Straight Bill of Lading with respect to said King's Express.

111.    As a result of the above-described actions, Defendant FedEx Freight, Defendant Aero Terra and Defendant Stallion Logistics each had a

contractual relationship with King's Express as to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

112.    As a result of the above-described actions, King's Express was acting on behalf of Defendant FedEx Freight, said Defendant Aero Terra and said Defendant Stallion Logistics as agent for all and each of them for the limited and specific purpose of effecting complete performance with respect to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

113.    As a result of the above-described actions, King's Express's actions to effect complete performance under each respective FedEx Freight Uniform Straight Bill of Lading as stated above were all within the terms of authorization and scope of agency conferred on King's Express by Defendant FedEx Freight, Defendant Aero Terra and Defendant Stallion Logistics, including the following actions: (i) Contracting with a third party truck carrier unrelated to itself to carry each such freight load per its respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation; (ii) Monitoring such truck freight carrier's execution thereof, and confirmed that the agreed delivery had taken place per contractual documentation; and then (iii) Paying the contracted shipment charge to such unrelated third party truck carrier timely and in full upon such confirmation.

114.    King's Express acted on behalf of both Defendant Aero Terra and Defendant Stallion Logistics as each of its respective agent for the specific and limited purpose of effecting completion on each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

115.    All conditions precedent to each of respective Defendants' contractual obligations, including Defendant Aero Terra's and Defendant Stallion Logistics', in favor of King's Express have been performed or have occurred.

116.    Despite demands by King's Express directed to Defendant Aero Terra and Defendant Stallion Logistics for payment of monies owed to said King's Express by said Defendant Aero Terra and said Defendant Stallion Logistics, said Defendant Aero Terra and said Defendant Stallion Logistics have each refused to pay said monies, and each continues in its respective refusal to pay said monies that each owes to King's Express as to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

WHEREFORE, Plaintiffs demand judgment against Defendant Aero Terra and Defendant Stallion Logistics in excess of the sum of $258,965.00, together with interest and costs.

31

Count VI – Quantum Meruit
(against Defendant Aero Terra and Defendant Stallion Logistics)

117.    Plaintiffs reallege and restate the allegations in Paragraphs 1 through 116 as Paragraph 117 of Count VI.

118.    Plaintiffs plead this Count VI, Quantum Meruit, in the alternative.

119.    Defendant Aero Terra and Defendant Stallion Logistics each knew or should have known that as to each tender to King's Express with respect to each of the 150 subject freight loads, King's Express in its capacity as a truck freight broker would render the performance of effectuating delivery as to each and all of the 150 subject freight loads under its respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation.

120.    As to each and all of the 150 subject freight loads, King's Express has rendered full performance and conferred all benefits due to each of Defendant Aero Terra and Defendant Stallion Logistics under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation, and each of Defendant Aero Terra and Defendant Stallion Logistics has received such full performance and all related benefits.

121.    Defendant Aero Terra and Defendant Stallion Logistics each knew or should have known that King's Express would be entitled to compensation for the services rendered to Defendant Aero Terra and Defendant Stallion Logistics by King's Express with respect to each of their respective interests under each respective FedEx Freight Uniform Straight Bill of Lading.

122.    Despite demand by King's Express directed to each of Defendant Aero Terra and Defendant Stallion Logistics for payment of monies owed to King's Express by each of said Defendant Aero Terra and said Defendant Stallion Logistics, each of said Defendant Aero Terra and said Defendant Stallion Logistics has refused to pay said monies, and each continues in its respective refusal to pay said monies that each owes to King's Express as to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

WHEREFORE, Plaintiffs demand judgment against each of Defendant Aero Terra and Defendant Stallion Logistics in excess of the sum of $258,965.00, together with interest and costs.

Count VII – Unjust Enrichment
(against Defendant Aero Terra and Defendant Stallion Logistics)

123.    Plaintiffs reallege and restate the allegations in Paragraphs 1 through 122 as Paragraph 123 of Count VII.

124.   Plaintiffs plead this Count VII, Unjust Enrichment, in the alternative.

125.   Defendant Aero Terra and Defendant Stallion Logistics each executed contractual documentation and each was a party to each respective FedEx Freight Uniform Straight Bill of Lading as to each and all of the 150 subject freight loads.

126.   As to each and all of the 150 subject freight loads, King's Express has rendered full performance and conferred all benefits due to each of Defendant Aero Terra and Defendant Stallion Logistics under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation, and each of Defendant Aero Terra and Defendant Stallion Logistics has received such full performance and all related benefits.

127.   Despite demand by King's Express directed to each of Defendant Aero Terra and Defendant Stallion Logistics for payment of monies owed to said King's Express by each of said Defendant Aero Terra and Defendant Stallion Logistics, each of said Defendant Aero Terra and Defendant Stallion Logistics has refused to pay said monies, and each continues in its respective refusal to pay said monies that each owes to King's Express as to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

WHEREFORE, Plaintiffs demand judgment against each of Defendant Aero Terra and Defendant Stallion Logistics in excess of the sum of $258,965.00, together with interest and costs.

Count VIII – Promissory Estoppel
(against Defendant Aero Terra and Defendant Stallion Logistics)

128.   Plaintiffs reallege and restate the allegations in Paragraphs 1 through 127 as its allegations in Paragraph 128 of Count VIII.

129.   Plaintiffs plead this Count VIII, Promissory Estoppel, in the alternative.

130.   Defendant Aero Terra and Defendant Stallion Logistics each made promises to each and all parties "downstream" of Defendant Aero Terra and Defendant Stallion Logistics in the "chain of tender" relating to the 150 subject freight loads.

131.   Defendant Aero Terra and Defendant Stallion Logistics each made such promises to King's Express through parties and entities "downstream" of Defendant Aero Terra and Defendant Stallion Logistics in the "chain of tender"

33

that were Defendant Aero Terra's and Defendant Stallion Logistics' agents for the specific and limited purpose of effecting complete performance of each respective FedEx Freight Uniform Straight Bill of Lading as to each and all of the 150 subject freight loads.

132.    Defendant Aero Terra knew or should have known that one of these parties and entities "downstream" of it in the "chain of tender" was Defendant Stallion Logistics; and Defendant Stallion Logistics knew or should have known that one of these parties and entities "downstream" of it in the "chain of tender" was King's Express; and Defendant Aero Terra knew or should have known that one of these parties and entities "downstream" of Defendant Aero Terra in the "chain of tender" was King's Express; to whom Defendant Aero Terra indirectly and Defendant Stallion Logistics directly made tender of each and all of the 150 freight loads.

133.    Because Defendant Aero Terra knew or should have known that Defendant Stallion Logistics was a truck freight broker and not a truck freight carrier, Defendant Aero Terra knew or should have known that to effect complete performance under each respective FedEx Freight Uniform Straight Bill of Lading, said Defendant Stallion Logistics would have to engage at least one additional party or entity "downstream" of Defendant Stallion Logistics in the "chain of tender" to do so.

134.    Defendant Stallion Logistics directly tendered the subject 150 freight loads to King's Express to effect complete performance under each respective FedEx Freight Uniform Straight Bill of Lading.

135.    Defendant Aero Terra and Defendant Stallion Logistics each had actual, direct or constructive knowledge that the following parties and entities would be engaged and were in fact engaged to effect complete performance under each respective FedEx Freight Uniform Straight Bill of Lading: (i) Defendant Stallion Logistics, (ii) King's Express, and (iii) each truck freight carrier that executed a respective freight move on the 150 subject freight loads whose performance King's Express: (A) Contracted for, (B) Monitored to completion, and (C) Paid for timely and in full after receiving evidence of completed delivery.

136.    To induce King's Express to perform the above-described respective acts of assistance in completing the 150 subject freight loads on behalf of all Defendant FedEx Freight, and on behalf of Defendant FedEx Freight's respective originating shippers, consignees and other third party customers, Defendant Aero Terra and Defendant Stallion Logistics each promised to do one of two things in response to each such act of assistance: (i) Arrange King's Express's compensation through the "upstream" party tendering to it, through another third party, and/or (ii) Pay King's Express's compensation directly itself.

34

137.    Defendant Aero Terra and Defendant Stallion Logistics each gave the above-described promises to King's Express for the sole purpose of inducing King's Express to effect complete performance of Defendant Aero Terra's and Defendant Stallion Logistics' contractual obligations and commercial commitments to the originating shippers, consignees or other third party customers under each respective FedEx Freight Bill of Lading.

138.    As a result each of Defendant Aero Terra's and Defendant Stallion Logistics' above-described promises to King's Express, and in detrimental reliance thereon, King's Express by rendering the above-described acts of assistance to Defendant Aero Terra and Defendant Stallion Logistics, effected complete performance of all services provided for under each FedEx Freight Uniform Straight Bill of Lading and related contractual documentation as to the 150 subject freight loads.

139.    By reason of (i) the promises each of Defendant Aero Terra and Defendant Stallion Logistics made to King's Express, together with (ii) King's Express's detrimental reliance thereon, and (iii) Defendant Aero Terra's and Defendant Stallion Logistics' receipt of full performance and all benefits described below, King's Express is entitled to be paid by Defendant Aero Terra and Defendant Stallion Logistics for its services that effected complete performance of all services provided for under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation as to each of the 150 subject freight loads.

140.    As to each and all of the 150 subject freight loads, King's Express has rendered full performance and conferred all related benefits due to each of Defendant Aero Terra and Defendant Stallion Logistics under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation, and each of Defendant Aero Terra and Defendant Stallion Logistics has received such full performance and all such benefits.

141.    Despite demand by King's Express directed to each of Defendant Aero Terra and Defendant Stallion Logistics for payment of monies owed to said King's Express by said Defendant Aero Terra and Defendant Stallion Logistics, said Defendant Aero Terra and said Defendant Stallion Logistics has each refused to pay said monies, and each continues in its refusal to pay said monies that each owes to King's Express as to each and all of the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading.

WHEREFORE, Plaintiffs demand judgment against each of Defendant Aero Terra and Stallion Logistics in excess of the sum of $258,965.00, together with interest and costs.

## Count XIII – Breach of Contract
(against Defendants Originating Shippers, Consignees, and Third Party Payors)

142. Plaintiffs reallege and restate the allegations set forth in Paragraphs 1 through 141 as Paragraph 142 of Count XIII.

143. Plaintiffs plead this Count XIII against Defendants Originating Shippers, Consignees and Third Party Payors in the event that Plaintiffs are unsuccessful in obtaining money damages against Defendant FedEx Freight pursuant to each respective FedEx Freight Uniform Straight Bill of Lading as to the 150 subject freight loads.

144. Each of Defendants Originating Shippers, Consignees, and Third Party Payors is a party to one or more of each respective FedEx Freight Uniform Bills of Lading executed and performed by King's Express as to each and all of the 150 subject freight loads.

145. As to each and all of the 150 subject freight loads, King's Express has rendered full performance and conferred all benefits due to each of Defendants Originating Shippers, Consignees, and Third Party Payors under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation in which said particular Defendant has an interest and to which said particular Defendant is a contract party, and said Defendants have each and all received full performance and all such benefits thereunder.

146. Defendants Originating Shippers, Consignees, and Third Party Payors are liable to King's Express as to the particular services they received under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation, for specified sums, in their respective denominations and as to all such benefits received as to each of their respective obligations.

WHEREFORE, Plaintiffs demand judgment against Defendants Originating Shippers, Consignees and Third Party Payors, and each of them, in such sums as they are each respectively liable for the particular services they received, in excess of the aggregate sum of $258,965.00, together with interest and costs.

## Count XIV – Quantum Meruit
(against Defendants Originating Shippers, Consignees, and Third Party Payors)

147. Plaintiffs reallege and restate the allegations in Paragraphs 1 through 146 as Paragraph 147 of Count XIV.

148. Plaintiffs plead this Count XIV, Quantum Meruit, in the alternative.

149.    Plaintiffs plead this Count XIV against Defendants Originating Shippers, Consignees and Third Party Payors in the event that Plaintiffs are unsuccessful in obtaining money damages against Defendant FedEx Freight under each respective FedEx Freight Uniform Straight Bill of Lading as to the 150 subject freight loads.

150.    Each and all Defendants Originating Shippers, Consignees, and Third Party Payors knew or should have known that as to each tender to King's Express with respect to each of the 150 subject freight loads, King's Express in its capacity as a truck freight broker would render the performance of effecting delivery of each of the 150 subject freight loads under its respective FedEx Freight Uniform Straight Bill of Lading and related contractual documents.

151.    Each and all Defendants Originating Shippers, Consignees, and Third Party Payors knew or should have known that King's Express would be entitled to compensation for the services rendered by King's Express.

152.    As to each and all of the 150 subject freight loads, King's Express has rendered full performance and conferred all benefits due to Defendants Originating Shippers, Consignees and Third Party Payors under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation, and Defendants Originating Shippers, Consignees and Third Party Payors has each received the full performance and all related benefits.

153.    Defendants Originating Shippers, Consignees, and Third Party Payors are liable to King's Express as to the particular services they received under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation, for specified sums, in their respective denominations and as to all such benefits received as to each of their respective obligations.

WHEREFORE, Plaintiffs demand judgment against Defendants Originating Shippers, Consignees and Third Party Payors, and each of them, in such sums as they are each respectively liable for the particular services they received, in excess of the aggregate sum of $258,965.00, together with interest and costs.

### Count XV – Unjust Enrichment
(against Defendants Originating Shippers, Consignees, and Third Party Payors)

154.    Plaintiffs reallege and restate the allegations in Paragraph 1 through 153 as Paragraph 154 of Count XV.

155.    Plaintiffs plead this Count XV, Unjust Enrichment, in the alternative.

156. Plaintiffs plead this Count XV against Defendants Originating Shippers, Consignees and Third Party Payors in the event that Plaintiffs are unsuccessful in obtaining money damages against Defendant FedEx Freight in the amounts and denomination of benefits such Defendant has received.

157. Each of Defendants Originating Shippers, Consignees, and Third Party Payors executed contractual documentation and was a party to each respective FedEx Freight Uniform Straight Bill of Lading as to the 150 subject freight loads.

158. As to each and all of the 150 subject freight loads, King's Express has rendered full performance and conferred all benefits due to each of Defendants Originating Shippers, Consignees, and Third Party Payors under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation entered into with each of Defendants Originating Shippers, Consignees, and Third Party Payors, and each of said Defendants have each received such full performance and all such benefits.

159. Defendants Originating Shippers, Consignees, and Third Party Payors are liable to King's Express for specified sums as to each of their respective obligations as to the particular services they received under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation entered into with each of said Defendants.

WHEREFORE, Plaintiffs demand judgment against Defendants Originating Shippers, Consignees and Third Party Payors, and each of them, in such sums as they are each respectively liable for the particular services they received, in excess of the aggregate sum of $258,965.00, together with interest and costs.

Count XVI – Promissory Estoppel
(against Defendants Originating Shippers, Consignees, and Third Party Payors)

160. Plaintiffs reallege and restate the allegations in Paragraphs 1 through 159 as its allegations in Paragraph 160 of Count XVI.

161. Plaintiffs plead this Count XVI, Promissory Estoppel, in the alternative.

162. Plaintiffs plead this Count XVI against Defendants Originating Shippers, Consignees and Third Party Payors in the event that they are unsuccessful in obtaining money damages against Defendant FedEx Freight in the amounts and denomination of benefits such Defendant has received.

163. Defendants Originating Shippers, Consignees, and Third Party Payors each made promises to each and all parties "downstream" of Defendant

FedEx Freight in the "chain of tender" relating to the 150 subject freight loads. These parties included: Defendant Aero Terra, Defendant Stallion Logistics, King's Express, and each carrier that executed a respective freight move on the 150 subject freight loads under each respective FedEx Freight Uniform Straight Bill of Lading whose performance King's Express: (i) Contracted for, (ii) Monitored to completion, and (iii) Paid for timely and in full after receiving evidence of completed delivery.

164.    Said Defendants Originating Shippers, Consignees, and Third Party Payors each made the above-described promises to King's Express by means of Defendant Aero Terra and Defendant Stallion Logistics each of whom acted on said Defendants Originating Shippers', Consignees', and Third Party Payors' behalf as agent for the specific and limited purpose of effecting complete performance on each and all of the 150 subject freight loads as to which each of Defendants Originating Shippers, Consignees, and Third Party Payors had its own respective interest under one or more respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation.

165.    To induce the respective acts of assistance in completing the 150 subject freight loads on behalf of all Defendants, Defendants Originating Shippers, Consignees, and Third Party Payors promised to do one of two things in response to each such act of assistance: (i) Arrange King's Express's compensation through the Defendant FedEx Freight, or through another "upstream" party tendering to King's Express as Defendant FedEx Freight's agent, or another third party, and/or (ii) Pay King's Express directly itself.

166.    Defendants Originating Shippers, Consignees, and Third Party Payors each gave the above-described promises to King's Express for the sole purpose of inducing King's Express to fulfill Defendants Originating Shippers', Consignees', and Third Party Payors' contractual obligations, commercial commitments, and other promises made to said Defendants and/or to Defendant FedEx Freight, Defendant Aero Terra and/or Defendant Stallion Logistics in each respective FedEx Freight Bill of Lading.

167.    As a result of Defendants Originating Shippers', Consignees' and Third Party Payors' above-described promises to King's Express, and in detrimental reliance thereon, King's Express by rendering the above-described acts of assistance to Defendants Originating Shippers, Consignees, and Third Party Payors, effected complete performance of all services provided for under each FedEx Freight Uniform Straight Bill of Lading and related contractual documentation as to the 150 subject freight loads.

168.    By reason of (i) the promises each of Defendants Originating Shippers, Consignees, and Third Party Payors made to King's Express, together with (ii) King's Express's detrimental reliance thereon, and (iii) Defendants Originating Shippers', Consignees' and Third Party Payors' receipt of full

performance and all benefits described below, King's Express is entitled to be paid by Defendants Originating Shippers, Consignees, and Third Party Payors for each of its services that effected complete performance of all services provided for under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation as to each of the 150 subject freight loads.

169.    As to each and all of the 150 subject freight loads, King's Express has rendered full performance and conferred all related benefits due to each of Defendants Originating Shippers, Consignees, and Third Party Payors under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation, and each of Defendants Originating Shippers, Consignees, and Third Party Payors has received such full performance and all such benefits.

170.    Defendants Originating Shippers, Consignees, and Third Party Payors are liable to King's Express as to the particular services they received under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation for each and all of the 150 subject freight loads, for specified sums, in their respective denominations and as to all such benefits received as to each of their respective obligations.

WHEREFORE, Plaintiffs demand judgment against Defendants Originating Shippers, Consignees and Third Party Payors, and each of them, in such sums as they are each respectively liable for the particular services they received, in excess of the aggregate sum of $258,965.00, together with interest and costs.

Count XVII – Negligent Misrepresentation
(against Defendant FedEx Freight, Defendant Aero Terra and Defendant Stallion Logistics)

171.    Plaintiffs reallege and restate the allegations set forth in Paragraphs 1 through 170 as its allegations in Paragraph 171 of Count XVII.

172.    On information and belief, Defendant FedEx Freight, Defendant Aero Terra, and Defendant Stallion Logistics were each aware that any truck freight broker "downstream" from any one of them in the "chain of tender", including King's Express, would have a pecuniary interest as to each or any of their representations as to each or any of their respective ability or willingness to pay on their respective obligations under each respective FedEx Freight Uniform Straight Bill of Lading and related contractual documentation with respect to the 150 subject freight loads.

173.    On information and belief, Defendant FedEx Freight, Defendant Aero Terra and Defendant Stallion Logistics supplied to King's Express false information to the effect that each and all of said parties would be able and

40

willing to pay on their respective obligations under the FedEx Freight Uniform
Straight Bill of Lading with respect to the 150 subject freight loads.

174. At no time relevant to this Complaint, and with respect to none of
the 150 subject freight loads, did either Defendant FedEx Freight, Defendant Aero
Terra or Defendant Stallion Logistics provide caution, warning or disclosure of
any kind to King's Express of the facts as to which any or all of them had direct,
actual, or constructive notice, regarding the subjects addressed above, which facts
included those regarding payment irregularities, character questions, and related
negative history between Defendant FedEx Freight and Defendant Aero Terra
described above.

175. Defendant FedEx Freight, Defendant Aero Terra and Defendant
Stallion Logistics were negligent or failed to exercise reasonable care or
competence: (i) In obtaining information about and affirmatively communicating
about the circumstances described above to King's Express, and (ii) In failing to
communicate facts to King's Express that each of Defendant FedEx Freight,
Defendant Aero Terra, and Defendant Stallion Logistics knew or should have
known and had a duty to communicate to Plaintiff King's Express by way of
caution, warning or disclosure with respect to the circumstances therein described.

176. Each of the following manifested such negligence and failure to
exercise reasonable care or competence on the parts of Defendants FedEx Freight,
Aero Terra, and Stallion Logistics as to each and all of the 150 subject freight
loads:

(a) The "quadruple brokering" sequence of tenders which they
effected herein, despite its non-compliance with standard trucking industry
practice and wasteful burden on the party paying freight charges;

(b) Their selection of participants in the "chain of tender" herein, and
failure to caution, warn or disclose to King's Express, despite Defendant FedEx
Freight's and Defendant Aero Terra's receipt of direct, actual and constructive
notice that called into material and reasonable question the personal and business
integrity of one or more individuals within one or both of those two companies;

(c) Their selection of participants in the "chain of tender" executed
herein, despite each of Defendant FedEx Freight's, Defendant Aero Terra's and,
on information and belief, Defendant Stallion Logistics' receipt of direct, actual
and constructive notice that Defendant Aero Terra was subject to a material
degree of risk of financial distress, up to and including insolvency; and

(d) Defendant FedEx Freight's and Defendant Aero Terra's actions to
ignore standard trucking industry practice on documentation receipt and payment
remittance activities, with negative consequences to the payment integrity
protections King's Express would otherwise have enjoyed, and reduction of the

41

"early warning" that such observance of standard by said Defendants would have afforded to King's Express.

177. King's Express justifiably and reasonably relied: (i) Upon Defendant FedEx Freight's, Defendant Aero Terra's, and Defendant Stallion Logistics' statements of fact described above; and (ii) Upon said parties' failure or omission to state facts which they knew or should have known, and of which they had a duty to inform King's Express with respect thereto by way of caution, warning or disclosure.

178. As a result of the above: (i) Defendant FedEx Freight's, Defendant Aero Terra's and Defendant Stallion Logistics' conduct described above, together with the false information described therein, and (ii) King's Express's justifiable and reasonable reliance thereon as described above, were the proximate cause of damage to King's Express, in an amount consisting of approximately (A) Cash outlays King's Express made to unrelated third party truck carriers in payments on Defendant FedEx Freight's behalf under each respective FedEx Freight Bill of Lading, plus (B) A reasonable additional sum of money approximated by King's Express's invoice to Defendant Stallion Logistics as to each and all of the 150 subject freight moves.

WHEREFORE, Plaintiffs demand judgment for actual or compensatory damages against Defendant FedEx Freight, Defendant Aero Terra, and Defendant Stallion Logistics in excess of the sum of $258,965.00, together with interest and costs.

Count XVIII -- Intentional Misrepresentation / Fraud
(against Defendant FedEx Freight, Defendant Aero Terra and Defendant Stallion Logistics)

179. Plaintiffs reallege and restate the allegations set forth in incorporate the allegations set forth in Paragraphs 1 through 178 as their allegations in Paragraph 179 of Count XVIII.

180. Defendant FedEx Freight, Defendant Aero Terra and Defendant Stallion Logistics, through their respective agents and employees, communicated to King's Express the information described above either knowingly or with reckless disregard of its truth or falsehood, or knowingly and with reckless disregard for the misrepresentation so resulting, or knowingly and intentionally failed to communicate information they had a duty to convey to King's Express in order to avoid such misrepresentation.

181. At all times relevant to this Complaint, on information and belief, Defendant FedEx Freight, Defendant Aero Terra, and Defendant Stallion Logistics each:

42

(a)   Intended to cause harm or knew that there was either a high risk or a certainty that the conduct of each of them was likely to result in non-payment to parties "downstream" of them in the "chain of tender", including King's Express;

(b)   Acted with malice, fraudulent intent, or conscious disregard for the rights and interests of those "downstream" of them in the "chain of tender", including King's Express; and

(c)   Therefore should be required to pay to King's Express as the "downstream" party in the "chain of tender" injured thereby such punitive or exemplary damages for the purpose of deterring each of them and others from like conduct in similar circumstances in the freight trucking industry as the Court shall deem justified.

WHEREFORE, Plaintiffs demand judgment for actual or compensatory damages against Defendant FedEx Freight, Defendant Aero Terra, and Defendant Stallion Logistics in excess of the sum of $258,965.00; and Plaintiffs demand judgment for punitive or exemplary damages in the amount of $750,000, or such amount as the Court shall deem justified, in addition to compensatory damages, against Defendant FedEx Freight, Defendant Aero Terra, and Defendant Stallion Logistics; together with interest and costs.

<u>Jury Demand</u>

Plaintiffs demand a trial by jury on all claims on which they have the right to trial by jury.

Dated this 5th day of June, 2006.

Philip E. Couri

Philip E. Couri
Joel A. Webber
Attorneys for
Plaintiffs
Couri and Couri
552 Lincoln Avenue
Winnetka, IL 60093
Telephone (847) 446 0044

**Exhibit 1**

**FedEx Freight**

PLACE PRO LABEL HERE

**UNIFORM STRAIGHT BILL OF LADING**
Original----Not Negotiable
**SUBJECT TO THE TERMS AND CONDITIONS OF THE UNIFORM BILL OF LADING**
Questions? Call 866.393.4585

Carrier SCAC Code:

| Date |
| Shipper's Bill of Lading # |
| Purchase Order # |
| Shipper # | Shipper # |

| **SHIPPER (from)** | Please provide zip codes and phone numbers. | **CONSIGNEE (to)** |

Shipper

Consignee

Address

Address

Address

Address

| City | State/Province | Zip | City | State/Province | Zip |

| Country | Phone | Country | Phone |

Special Instructions

**BILL FREIGHT CHARGES TO: (if different than above)**

| Name | Street |

| P.O. Box | City | State | Zip |

Freight charges are **PREPAID** unless marked collect.

**CHECK BOX IF COLLECT** ☐

**C.O.D.**

$ _____ AMOUNT

1. The letters "C.O.D." must appear in box before consignee's name above.
2. C.O.D. funds to be collected as ☐ Certified Funds ☐ Company Check ☐ Personal Check
3. C.O.D. fee to be paid by: ☐ Shipper ☐ Consignee

**REMIT C.O.D. TO: (if different than shipper above)**

| Name | Street |

| City | State | Zip | Phone |

RECEIVED, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to the rates, classifications, and rules that have been established by the carrier and are available to the shipper, on request, and to all applicable state and federal regulations. the property described below in apparent good order, except as noted (contents and condition of contents of packages unknown) marked, consigned, and destined as shown hereon, which said carrier agrees to carry to its destination, if on its route, or otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of the property over all or any portion of said route to destination, and as to each party at any time interested in all or any said property, that every service to be performed hereunder shall be subject to all the conditions not prohibited by law, whether printed or written, herein contained, including the conditions on the back hereof, or otherwise referenced, which are hereby agreed to by the shipper and accepted for himself and his assigns.

| NO. HANDLING UNITS | | HM (X) | DESCRIPTION OF ARTICLES, KIND OF PACKAGE, SPECIAL MARKS AND EXCEPTIONS (subject to correction) | WEIGHT IN LBS. | NMFC ITEM # (subject to correction) | CLASS | CUBE |
|---|---|---|---|---|---|---|---|
| Pieces | Pallets | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

TOTAL HANDLING UNITS: Pieces _____ Pallets _____ Total _____

**MARK "X" IN THE HM COLUMN TO DESIGNATE HAZARDOUS MATERIALS AS DEFINED IN DOT REGULATIONS.**

**FOR FREIGHT COLLECT SHIPMENTS**

Subject to Section 7 of conditions of applicable bill of lading. If this shipment is to be delivered to the consignee, without recourse on the consignor, the consignor shall sign the following statement. The carrier may decline to make delivery of this shipment without payment of freight and all other lawful charges.

Consignor Signature _____

**NOTE (1)** Where the rate and carrier's liability for loss or damage may be dependent on value, shippers must state specifically in writing the agreed or declared value of the property as follows: "The agreed or declared value of the property is specifically stated by the shipper to be not exceeding _____ per _____."

**NOTE (2)** Liability Limitation for loss or damage on this shipment shall be applicable as provided by contract or in the current National Motor Freight Classification, STB NMF 100 series, or this carrier's governing tariffs. In no event shall carrier's liability exceed $100,000 per incident.

**NOTE (3)** Commodities requiring special or additional care or attention in handling or stowing must be so marked and packaged as to ensure safe transportation with ordinary care. See Sec. 2(e) of NMFC Item 360.

**SHIPPER CERTIFICATION**

This is to certify that the above named materials are properly classified, described, packaged, marked, and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation.

Shipper Signature _____ Date _____

**CARRIER CERTIFICATION**

Carrier acknowledges receipt of packages and required placards. Carrier certifies emergency response information was made available and/or carrier has the DOT emergency response guidebook or equivalent document in the vehicle.

| SINGLE SHIPMENT Circle One | DATE | DRIVER / EMPLOYEE NUMBER & SIGNATURE |
|---|---|---|
| Y          N | | |

# UNIFORM STRAIGHT BILL OF LADING
## Terms & Conditions

Sec. 1. (a) The carrier or the party in possession of any of the property described in this bill of lading shall be liable as at common law for any loss thereof or damage thereto, except as hereinafter provided.

(b) No carrier shall be liable for any loss or damage to a shipment or for any delay caused by an Act of God, the public enemy, the authority of law, or the act or default of shipper. Except in the case of negligence of the carrier or party in possession, the carrier or party in possession shall not be liable for loss, damage or delay which results: when the property is stopped and held in transit upon request of the shipper, owner or party entitled to make such requests; or from faulty or impassible highway, or by lack of capacity of a highway bridge or ferry; or from a defect or vice in the property; or from riots or strikes. The burden to prove freedom from negligence is on the carrier or the party in possession.

Sec. 2. Unless arranged or agreed upon, in writing, prior to shipment, carrier is not bound to transport a shipment by a particular schedule or in time for a particular market, but is responsible to transport with reasonable dispatch. In case of physical necessity, carrier may forward a shipment via another carrier.

Sec. 3. (a) As a condition precedent to recovery, claims must be filed in writing with any participating carrier having sufficient information to identify the shipment.

(b) Claims for loss or damage must be filed within nine months after the delivery of the property (or, in the case of export traffic, within nine months after delivery at the port of export), except that claims for failure to make delivery must be filed within nine months after a reasonable time for delivery has elapsed.

(c) Suits for loss, damage, injury or delay shall be instituted against any carrier no later than two years and one day from the day when written notice is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts of the claim specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier shall be liable, and such claims will not be paid.

(d) Any carrier or party liable for loss of or damage to any of said property shall have the full benefit of any insurance that may have been effected, upon or on account of said property, so far as this shall not avoid the policies or contracts of insurance, PROVIDED, that the carrier receiving the benefit of such insurance will reimburse the claimant for the premium paid on the insurance policy or contract.

Sec. 4. (a) If the consignee refuses the shipment tendered for delivery by carrier or if carrier is unable to deliver the shipment, because of fault or mistake of the consignor or consignee, the carrier's liability shall then become that of a warehouseman. Carrier shall promptly attempt to provide notice, by telephonic or electronic communication as provided on the face of the bill of lading, if so indicated, to the shipper or the party, if any, designated to receive notice on this bill of lading. Storage charges, based on carrier's tariff, shall start no sooner than the next business day following the attempted notification. Storage may be, at the carrier's option, in any location that provides reasonable protection against loss or damage. The carrier may place the shipment in public storage at the owner's expense and without liability to the carrier.

(b) If the carrier does not receive disposition instructions within 48 hours of the time of carrier's attempted first notification, carrier will attempt to issue a second and final confirmed notification. Such notice shall advise that if carrier does not receive disposition instructions within 10 days of that notification, carrier may offer the shipment for sale at a public auction and the carrier has the right to offer the shipment for sale. The amount of sale will be applied to the carrier's invoice for transportation, storage and other lawful charges. The owner will be responsible for the balance of charges not covered by the sale of the goods. If there is a balance remaining after all charges and expenses are paid, such balance will be paid to the owner of the property sold hereunder, upon claim and proof of ownership.

(c) Where carrier has attempted to follow the procedure set forth in subsections 4(a) and (b) above, and the procedure provided in this section is not possible, nothing in this section shall be construed to abridge the right of the carrier at its option to sell the property under such circumstances and in such manner as may be authorized by law. When perishable goods cannot be delivered and disposition is not given within a reasonable time, the carrier may dispose of property to the best advantage.

(d) Where a carrier is directed by consignee or consignor to unload or deliver property at a particular location where consignor, consignee, or the agent of either, is not regularly located, the risk after unloading or delivery shall not be that of the carrier.

Sec. 5. (a) In all cases not prohibited by law, where a lower value than the actual value of the said property has been stated in writing by the shipper or has been agreed upon in writing as the released value of the property as determined by the classification or tariffs upon which the rate is based, such lower value plus freight charges if paid shall be the maximum recoverable amount for loss or damage, whether or not such loss or damage occurs from negligence.

(b) No carrier hereunder will carry or be liable in any way for any documents, coin money, or for any articles of extraordinary value not specifically rated in the published classification or tariffs unless a special agreement to do so and a stipulated value of the articles are endorsed on this bill of lading.

Sec. 6. Every party, whether principal or agent, who ships explosives or dangerous goods, without previous full written disclosure to the carrier of their nature, shall be liable for and indemnify the carrier against all loss or damage caused by such goods. Such goods may be warehoused at owner's risk and expense or destroyed without compensation.

Sec. 7. (a) The consignor or consignee shall be liable for the freight and other lawful charges accruing on the shipment, as billed or corrected, except that collect shipments may move without recourse to the consignor when the consignor so stipulates by signature or endorsement in the space provided on the face of the bill of lading. Nevertheless, the consignor shall remain liable for transportation charges where there has been an erroneous determination of the freight charges assessed, based upon incomplete or incorrect information provided by the consignor.

(b) Notwithstanding the provisions of subsection (a) above, the consignee's liability for payment of additional charges that may be found to be due after delivery shall be as specified by 49 U.S.C. §13706, except that the consignee need not provide the specified written notice to the delivering carrier if the consignee is a for-hire carrier.

(c) Nothing in this bill of lading shall limit the right of the carrier to require the prepayment or guarantee of the charges at the time of shipment or prior to delivery. If the description of articles or other information on this bill of lading is found to be incorrect or incomplete, the freight charges must be paid based upon the articles actually shipped.

Sec. 8. If this bill of lading is issued on the order of the shipper, or his agent, in exchange or in substitution for another bill of lading, the shipper's signature on the prior bill of lading or in connection with the prior bill of lading as to the statement of value or otherwise, or as to the election of common law or bill of lading liability shall be considered a part of this bill of lading as fully as if the same were written or printed made in connection with this bill of lading.

Sec. 9. If all or any part of said property is carried by water over any part of said route, such water carriage shall be performed subject to the terms and provisions and limitations of liability specified by the "Carriage of Goods By Sea Act" and any other pertinent laws applicable to water carriers.